[No. 27591. Department Two. August 31, 1939.]

LLOYD R. BOHLKE, *Respondent*, v. FRANCIS B. WRIGHT
*et al., Appellants.*[1]

*Clark & Grady,* for appellants.

*Stephen E. Chaffee,* for respondent.

SIMPSON, J.—This action was instituted to collect an amount alleged to be due plaintiff for the agreed value of apple peelings and cores sold and delivered to defendants.

The complaint alleges that, September 24, 1937, plaintiff and defendants entered into a contract whereby plaintiff agreed to sell to defendants and defendants agreed to purchase apple peelings and cores which plaintiff had secured from the Valley Evaporating Company's plant at Prosser, Washington, at the price of two dollars per ton in the event that the apple peel-

[1]Reported in 93 P. (2d) 321.

ings were not furnished for the entire season, and with the additional agreement that, in the event the peelings were furnished for the season, the price would be $2.50 per ton; and that plaintiff complied with the agreement and delivered to defendants 771,614 pounds of peelings and cores.

It was further alleged that, on the first day of November, 1937, defendants refused to comply thereafter with the contract between plaintiff and defendants and refused to accept peelings from plaintiff; that plaintiff was compelled to haul and dump them, to his damage in the sum of $120; and that the only amount paid by defendants upon the contract was $166.18.

The defendants answered, denying the allegations of the complaint, and then set up a defense which, in effect, alleged that the Yakima Fruit Products Company had entered into a written contract with the Valley Evaporating Company under which the Yakima Fruit Company was to receive the skins and cores from the evaporating company's plant at Prosser free of charge; that the Yakima Fruit Products Company orally assigned to defendants its right to take and receive the skins and cores from the Prosser plant; that defendants contemplated hauling the same from Prosser to their winery plant at Grandview, Washington; and that defendants were not informed by the Yakima Fruit Products Company that it was to receive the skins and cores from the Prosser plant without any charge being made therefor.

The answer further alleged that, September 24, 1937, plaintiff represented to defendants that he had a contract with the Valley Evaporating Company for the purchase from it of apple skins and cores from its Prosser plant for which the Yakima Fruit Products Company had contracted, and plaintiff offered to sell and deliver the same to defendants at Grandview at two

dollars per ton, including hauling charges; that the offer was made to the manager of defendants' Grandview plant, and, relying upon these representations, the manager of the Grandview plant accepted the offer subject to the approval of defendants; that the defendants' undertaking to pay plaintiff for deliveries of apple peelings at Grandview was conditioned upon plaintiff's having the contract which he represented he had with the Valley Evaporating Company; that plaintiff in fact did not have the contract represented with the evaporating company, but merely had an arrangement with that company to the effect he would haul away and dump any cores and peelings which the company wanted hauled away, and that for this service he was to be compensated at the rate of fifty cents per ton; that the defendants believed and relied upon the representations of plaintiff and would not have entered into any contract with plaintiff if they had known his representations were false; and that, therefore, defendants should be obligated to pay plaintiff only the reasonable value, cost, and expense of hauling the peelings from Prosser to Grandview, that is, $191.40 less $166.18 already paid, leaving a balance of $25.22.

The case was tried to the court, sitting without a jury, and at its termination findings of fact, conclusions of law, and judgment were entered in favor of plaintiff.

Error is assigned in respect to the finding that appellants had contracted unconditionally to purchase waste apple peelings from respondent.

The evidence disclosed that respondent lives at Grandview and owns a truck, which he uses for general hauling. Appellants operate a winery at Grandview, and in the process of making wine use apple peelings and cores, which are the by-products of apple dehydrating plants.

Respondent in testifying, among other things, stated that he had a contract with the Valley Evaporating Company to take the peelings and cores from its plant for an indefinite period of time; that he was to have them in consideration of keeping the bins, in which the peelings and cores were deposited, cleaned out each day; that, September 24, 1937, he saw Mr. Hafey, the foreman in charge of appellants' winery, and offered to sell to the winery the apple peelings and cores at a price of $2.50 per ton; that he was told by Mr. Hafey that he (Hafey) could not make a contract without the approval of appellant (Mr. Wright).

Respondent further testified that he unloaded some of the apple peelings and cores on September 24th and 25th, and was told by Mr. Hafey that he had contacted Mr. Wright and that the winery would take the apple peelings and cores at a price of two dollars per ton, subject to a raise of fifty cents per ton provided respondent would deliver the apple peelings and cores for the entire season.

Respondent also testified that he talked to Mr. Wright over the telephone and was told that the agreement made with Mr. Hafey was approved and, in talking about the contract, Mr. Wright said "That's fine," and he would see me later. His testimony was that he saw Mr. Wright the last week in October and was informed that he, Wright, had traded for the peelings and that he would not take any more peelings from respondent, and that thereafter respondent was compelled to and did dump the balance of the peelings and cores he secured from the Valley Evaporating Company's plant at a cost to him of $120.

Appellants denied respondent's contention that he had title to or the right to the peelings and cores. Mr. Wright testified that he told respondent that he wanted to see his contract with the Valley Evaporating Com-

pany for the peelings at their Prosser plant, and that appellants' contract with respondent for peelings from the Prosser plant was expressly contingent upon respondent's having the right to and owning those peelings, and if respondent did not possess such ownership the contract would not have been made by appellants. Mr. Wright also denied having a telephone conversation with respondent.

It is clear that respondent's evidence, if believed by the trial court, established not only respondent's right to the peelings at the Prosser plant, but also proved the contract to sell such peelings to appellants as alleged by respondent, and that respondent complied with its terms. It is equally true that Mr. Wright's evidence and the testimony of other witnesses was in sharp conflict with that of respondent. We think it is significant that, notwithstanding the fact that appellants contended they were the assignee of the Yakima company which had the right to the peelings of the Prosser plant, they did not assert their rights as such assignee, nor did they communicate directly with the Valley Evaporating Company until respondent had made deliveries of apple peelings to appellants in substantial quantities.

In such cases, we will not disturb the findings of the trial court upon conflicting evidence unless the evidence preponderates against the findings of the trial court. *Peterson v. Ogle,* 110 Wash. 610, 188 Pac. 768; *Yarnall v. Knickerbocker Co.,* 120 Wash. 205, 206 Pac. 936; *O'Reilly v. Miller,* 148 Wash. 277, 268 Pac. 869; *Rockwell v. Peyran,* 172 Wash. 434, 20 P. (2d) 841; *Puget Sound Nat. Bank v. Olsen,* 174 Wash. 200, 24 P. (2d) 613; *Anthony v. Department of Labor & Industries,* 178 Wash. 506, 35 P. (2d) 54; *Automatic Canteen Co. of Washington v. Automatic Canteen Co.*

*of America,* 182 Wash. 133, 45 P. (2d) 41; *Kelly v. Bank,* 188 Wash. 614, 62 P. (2d) 1359.

The trial court was in a better position than this court to weigh the evidence of the several witnesses who appeared and testified, and in such cases we will not disturb the court's findings when a case hinges on the credibility and capacity of the witnesses. *Kuhn v. Lewis,* 153 Wash. 457, 279 Pac. 597; *In re Larsen's Estate,* 191 Wash. 257, 71 P. (2d) 47; *Dowell, Inc. v. United Pac. Casualty Ins. Co.,* 191 Wash. 666, 72 P. (2d) 296; *Bostwick v. Washington Motor Coach Co.,* 194 Wash. 178, 77 P. (2d) 790.

A reading of the statement of facts discloses that there was substantial evidence to support the conclusions of the trial court, and that the preponderance of the evidence was *not* clearly against them, and justified the court's conclusion.

Appellants urge error in the admission of the record of the telephone company of a telephone conversation. The divisional manager of the telephone company was allowed to identify a slip of paper, which was admitted in evidence, upon which was a notation made by one of the telephone operators to the effect that, September 28, 1937, Mr. Hafey had called Mr. Wright on the telephone in Yakima. This evidence was introduced to corroborate the testimony of respondent that he had talked to Mr. Wright by telephone from the winery office September 28, 1937. Appellants contend that the divisional manager, not having seen the notation made on the slip, was incompetent to identify the written instrument.

The slip of paper was part of the records of the telephone company, and as such was entitled to be admitted in evidence. *Cascade Lumber Co. v. Aetna Indemnity Co.,* 56 Wash. 503, 106 Pac. 158; *Pacific Tel. & Tel. Co. v. Huetter,* 68 Wash. 442, 123 Pac. 607;

*Atkin v. Long Lake Lumber Co.,* 159 Wash. 27, 292 Pac. 104.

The other assignments of error having been considered, and finding no error in the record, the judgment is therefore affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and MILLARD, JJ., concur.